Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000538
28-NOV-2018
08:05 AM

NO. CAAP-15-0000538

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


THEODORE K. BLAKE, STACY MONIZ, DEXTER GOMES,
Plaintiffs-Appellants,
v.
ALEXANDER & BALDWIN, LLC., Defendant-Appellee,
and
JOHN DOES 1-50, JANE DOES 1-50, DOE PARTNERSHIPS 1-50,
DOE CORPORATIONS 1-50, DOE GOVERNMENTAL ENTITIES 1-50
AND DOE ENTITIES 1-50, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 14-1-0149 (JKW))


MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Fujise and Reifurth, JJ.)

Plaintiffs-Appellants Theodore K. Blake (**Blake**), Stacy Moniz (**Moniz**), and Dexter Gomes (**Gomes**) (collectively **Plaintiffs**) appeal from a Judgment entered in favor of Defendant-Appellee Alexander & Baldwin, LLC (**A&B**) filed on June 19, 2015, in the Circuit Court of the Fifth Circuit (**circuit court**).[1] Plaintiffs challenge the circuit court's order granting A&B's summary judgment motion.

On appeal, Plaintiffs contend that the circuit court erred by: (1) finding no genuine issue of material fact and granting summary judgment for A&B; and (2) denying Plaintiffs' request under Hawai'i Rules of Civil Procedure (**HRCP**) Rule 56(f).

---

[1] The Honorable Kathleen N.A. Watanabe presided.

For the reasons discussed below, we affirm.

## I. Background

This matter involves a 1991 License Agreement between A&B and Blake, as Vice-President of Kawahinehelelani, Inc. dba Na Pohaku (**KI**). Plaintiffs initiated this action by filing a "Complaint for Preliminary and Permanent Injunction and for Damages" (**Complaint**) on July 22, 2014, alleging nine counts stemming from allegations going back to "sometime in 1992 or early 1993[.]"[2] The Complaint alleges in relevant part:

> 7. On or about August 1, 1991, Defendant A&B entered into a license agreement with Plaintiffs predecessor in interest, "Kawahinehelelani Inc." (KI) and Blake to allow KI and Blake to rent a portion of real property at Kukui'ula (the yard) and for the purpose of propagation of moss and lichen on Pahoehoe rock and to conduct harvesting of rock upon Defendant A&B's property located at Kukui'ula. In return, KI and Blake would pay an agreed upon rent price and supply Defendant A&B with a portion of the rock they harvested.

> 8. The license agreement was signed on December 11, 1991 with an effective date of August 1, 1991. The License Agreement was drafted by Defendant A&B.

> 9. Sometime in 1992 or early 1993, KI and Blake were effectively locked out of their yard by Defendant A&B's general contractor at Kukui'ula, Kiewit Corporation. Upon information and belief, this was done, in part, to exclude Blake and KI workers from witnessing the intentional and/or negligent destruction of at least one Hawaiian archaeological site by Defendant A&B's general contractor, Kiewit Construction Company ("Kiewit") and to allow Defendant A&B to take possession of all of the harvested rock.

> 10. Upon information and belief, by this time KI and Blake had harvested approximately twenty-four thousand (24,000) cubic yards of rock, which was stored at their yard at Kukui'ula pursuant to the license agreement. Plaintiffs work product, the rocks, was subsequently wrongfully seized by Defendant A&B and Plaintiffs were denied access to retrieve the rock and denied the opportunity to continue their business by Defendant A&B.

---

[2] The Complaint alleges the following counts: Count I, Injunctive Relief; Count II, Conversion; Count III, Negligence; Count IV, Unjust Enrichment; Count V, Breach of Contract; Count VI, Negligent and/or Intentional Misrepresentation; Count VII, Violation of HRS Chapter 480; Count VIII, Breach of the Implied Covenant of Good Faith and Fair Dealing; and Count IX, Respondeat Superior.

11. Plaintiffs predecessor KI, and Blake, and later joined by Moniz, attempted on several occasions to attempt to retrieve their property but were denied by Defendant A&B. Defendant A&B claimed that Plaintiffs had "abandoned" the rock and the yard. Plaintiffs denied this, yet A&B continued to maintain its position of "abandonment." Blake and Moniz have filed a police report (Report # 2014-03467) with the Kauai Police Department alleging the wrongful taking of their property of Defendant A&B.

(Emphasis added).

The Complaint further alleges that A&B continued to send Blake and KI invoices pursuant to the License Agreement up to December 2013, and that Moniz made a payment by check in the amount of $100, to be applied to the back rent, which A&B cashed in or around December 2013.

On April 2, 2015, A&B filed a motion for summary judgment arguing that all of Plaintiffs' claims were barred by applicable statutes of limitations,[3] the doctrine of laches barred Plaintiffs' claims, and the License Agreement was abandoned and there were no genuine issues of material fact.

A&B adduced evidence in support of its summary judgment motion, including the following: (1) Declaration of Tom Shigemoto (**Shigemoto**), Vice President of A&B; (2) Declaration of Charles W. Loomis (**Loomis**), Associate General Counsel and Assistant Secretary of A&B; and (3) Declaration of George W. Van Buren (**Van Buren**), attorney for A&B. Shigemoto attested, *inter alia*, that he has been employed at A&B since August 1991 and it is A&B's practice to send letters terminating a license that is in default and would expect such a letter to be in the subject file; the license was in default; he believes a letter terminating the license was sent; "[a]fter 1993 everybody treated the license as terminated"; and "the license for all purposes including payment and use was abandoned."

Loomis attested, *inter alia*, that in his capacity as Associate General Counsel and Assistant Secretary of A&B, he is

_____

[3] A&B asserted, and it was not disputed below, that a statute of limitations of either two, four, or six years applied to the respective counts asserted in the Complaint.

the custodian of business records for A&B; he has been employed with A&B since 1989; that it is A&B's practice to send letters terminating a license that is in default and he would expect such a letter to be in the subject file; that the file for the subject license was destroyed as part of A&B's normal document management program; Exhibit 5 is a copy of A&B's accounting records kept in the normal course of business under his custody and control, which reflects the license was in default as of 1993; Exhibit 6 is an A&B business record kept in the normal course of business under his custody and control, indicating the subject license was terminated; and Exhibit 7 was a Certificate of Destruction from Crown Records Management showing the subject file was destroyed in 1998.

Attached to the declarations in support of A&B's motion were certain relevant documents:[4] (1) the License Agreement between A&B and Blake/KI, which Moniz had previously submitted in the case, which grants to Blake/KI a license for the use of certain premises located in Kōloa, Hawai'i "for the purpose of propogation [sic] of moss and lichens on pahoehoe rock[,]" (and which does not indicate a license to harvest rocks); (2) Exhibit 5, titled "A&B Properties, Inc. Tenant A/R Daily Summary Report", showing Blake as the tenant, which indicates an outstanding balance starting in mid-1992 and as of January 1994, an amount owing of $9,333.99; (3) Exhibit 6, which has a reference to "Blake, Theodore K." and "Propagation of moss an [sic] lichens on pahoehoe rock", and which states "TERMINATION: 12/21/1993 _ effective 12/21/1993"; and (4) a copy of a Certificate of Destruction from Crown Records Management which appears to indicate that the file related to the license was destroyed in 1999.

In opposition to A&B's summary judgment motion, Moniz argued that the claims in the Complaint were not time barred,

---

[4] There is no challenge to the admissibility of the documents submitted to the circuit court.

laches does not apply, and there was no abandonment. With regard to applicable statutes of limitations, Moniz asserted the Complaint was filed "within the 2 to 6 year [statute of limitations] that apply to all of Plaintiffs['] claims." Moniz adduced the following evidence in opposition to the summary judgment motion: (1) Declaration of Moniz; (2) Declaration of Blake; and (3) Declaration of Hartwell H. K. Blake (**Hartwell**).

Of note, Blake attested, *inter alia*, that: he was the Vice President and Director of KI and successor in interest of the corporation; he was primarily responsible for all operations at the subject location at Kukui'ula from 1991 to 1993; upon the destruction of an auwai system located on the Kukui'ula property by agents of A&B (**Kiewit**), he reported the destruction to A&B; "the destruction of the auwai system in 1992 and my reporting of the same caused adverse relations for us with Kiewit and Defendant A&B"; "[f]rom this point forward, we had strained relationships with Defendant A&B and Kiewit . . . We began to get locked out of our yard by Kiewit machinery blocking access to the yard and refusing to remove its machinery to allow access"; "I decided to cease harvesting operations in 1993 to prevent confrontation between our workers, who were mostly Native Hawaiian, and A&B and Kiewitt [sic]" and "[t]o the best of my knowledge, we had harvested approximately 24,000 cubic yards of rock by this time." (Emphasis added).

Blake further attested that he had entered a verbal agreement with Bill Campbell (**Campbell**) of A&B in June of 1991 that "we would leave our harvested rocks on the Kukui'ula property until needed and/or purchased by A&B or its agents and that 50% of the rock we harvested would belong to Defendant A&B." Blake also attested that from 1993 to 2002, he received monthly invoices from A&B for rent due under the License Agreement, and that he did not receive a letter terminating the License Agreement.

Attached to the declarations in opposition to the summary judgment motion were the following relevant documents:

various statements referencing dates between 2008 and 2013 from "A&B Properties, Inc.", all indicating a balance forward and amount due of $9,333.99; and a check made payable to "A&B Properties, Inc." for $100 from South Pac Holdings LLC, which Moniz attested he mailed to A&B on or about November 29, 2013, and that was cashed by A&B on December 2, 2013.

On June 19, 2015, the circuit court filed its order granting A&B's summary judgment motion and the Judgment against Plaintiffs.

## II. Discussion

We review a trial court's grant of summary judgment *de novo*. Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 104, 176 P.3d 91, 103 (2008).

Plaintiffs primarily contend that summary judgment for A&B was improper because A&B's assertion of abandonment is a non-issue given that the License Agreement was not terminated as required under its terms and Blake's agreement with Campbell allowed Plaintiffs to keep harvested rocks on A&B property. Thus, Plaintiffs contend this is not a typical contract breach case where "accrual logically begins at the time of injury[,]" because both contracts are still in effect. Plaintiffs' other primary argument is that the statute of limitation was "reset" and a new limitations period began to run because Plaintiffs made partial payment in 2013 of the outstanding amount owing, which A&B accepted. We conclude all of Plaintiffs' arguments lack merit.

As noted above, the License Agreement, effective August 1, 1991, provided that A&B granted Blake and KI a "license for the use of certain premises . . . for the purpose of propogation [sic] of moss and lichens on pahoehoe rock" for a license fee of $180.00 per month. The Complaint alleges that KI and Blake were effectively locked out of the subject property "[s]ometime in 1992 or early 1993[.]" Similarly, Blake's declaration attests

6

that after he reported the destruction of an auwai system to A&B in 1992, "[w]e began to get locked out of our yard by Kiewit machinery blocking access to the yard and refusing to remove its machinery to allow access" and that he decided to cease harvesting operations in 1993 to prevent confrontation between his workers and A&B/Kiewit.

Based on their Complaint, as well as the declaration of Blake, all of Plaintiffs' claims stem from and arise out of being "effectively locked out" or having their access to the property blocked in 1992 or 1993. Plaintiffs did not file their Complaint until July 22, 2014, more than twenty years after they were aware that they were being "locked out" or were being blocked from accessing the property and the rocks they claim were harvested by KI.

As asserted by A&B, and not disputed by Plaintiffs, the applicable statute of limitations for all of the counts in the Complaint range from two to six years. The Complaint was thus filed long after all statutes of limitations, respectively, had expired.

Plaintiffs' arguments and evidence to the effect that they did not receive any notice of termination of the License Agreement is immaterial. Based on the claims asserted in the Complaint, the Plaintiffs' claims arise from being "locked out" of the property to conduct their business under the License Agreement, and also not being able to access the rocks that KI had harvested prior to being locked out.[5] In our view, whether

---

[5] We additionally note that if records terminating the License Agreement were necessary it would defeat one of the purposes of a statute of limitations, which is that claims should be timely asserted before evidence related to the claims no longer exist. See Cochran v. Pflueger Automobiles, Inc., 72 Haw. 460, 464, 821 P.2d 934, 936 (1991) (citation and internal brackets omitted) ("A statute of limitations is designed to preclude a stale claim where the other party must gather evidence after time has dissipated memories, documents and real evidence."); First Hawaiian Bank v. Powers, 93 Hawai'i 174, 187, 998 P.2d 55, 68 (App. 2000) (citation omitted) ("Statutes of
(continued...)

A&B gave notice of terminating the License Agreement is not pertinent to whether the statute of limitations has run on the claims asserted in the Complaint.

Further, to the extent that Plaintiffs' claims are based on the contention that their "work product, the rocks" were wrongfully seized and they were denied access "to retrieve the rock[s]," there are two reasons these claims fail as a matter of law. First, Plaintiffs knew or should have known in 1993, when they assert they were "locked out" of the property, that they were being denied access to their claimed rocks regardless of any agreement with Campbell about leaving rocks on the property. Second, notwithstanding Plaintiffs' assertion that they had a right to "harvest" rocks, the License Agreement does not so provide. Rather, the License Agreement simply allowed Blake/KI use of the designated premises "for the purpose of propogation [sic] of moss and lichens on pahoehoe rock." The License Agreement contains no language to the effect that Blake/KI could harvest or take ownership of rocks on the property.

We also conclude that the payment of $100 in November 2013, attested to by Moniz, did not "reset" the applicable statutes of limitations for Plaintiffs' claims against A&B in this case. Citing to First Hawaiian Bank v. Zukerkorn, 2 Haw. App. 383, 633 P.2d 550 (1981), Plaintiffs argue that "the acknowledgment or partial payment of the debt evidences an intent to make future payment by which the debtor is in a sense renewing the agreement to pay the moneys due under the otherwise lapsed contract." Plaintiffs' reliance on Zukerkorn and related authority is misplaced. As expressed in Zukerkorn, "[a] new promise by the debtor to pay his debt, whether then barred by the applicable statute of limitations or not, binds the debtor for a

---

[5] (...continued) limitations attempt to protect against the difficulties caused by lost evidence, faded memories and disappearing witnesses.").

8

new limitations period." <u>Id.</u> at 385, 633 P.2d at 552 (emphasis added). As argued by A&B, the rule expressed in <u>Zukerkorn</u> applies to extend the statute of limitation to assert claims <u>against the debtor</u>. It does not apply to the circumstances in this case, where Plaintiffs (the debtors) have paid part of an outstanding amount and seek to revive time-barred claims they wish to now assert.

Finally, Plaintiffs also contend that the circuit court should have permitted Plaintiffs to conduct discovery pursuant to HRCP Rule 56(f).

> Rule 56(f) allows a party to request a delay in granting summary judgment <u>if the party can make a good faith showing that postponement of the ruling would enable it to discover additional evidence which might rebut the movant's showing of the absence of a genuine issue of material fact. The party is required to show what specific facts further discovery might unveil</u>.

<u>Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co.</u>, 116 Hawai'i 277, 308, 172 P.3d 1021, 1052 (2007) (emphasis in original) (citation omitted); <u>U.S. Bank Nat'l Ass'n v. Salvacion</u>, 134 Hawai'i 170, 176, 338 P.3d 1185, 1191 (App. 2014) (citation omitted) (a request for HRCP Rule 56(f) continuance "must demonstrate how postponement of a ruling on the motion will enable the moving party, by discovery or other means, to rebut the movant's showing of absence of a genuine issue of fact").

Plaintiffs rely on the declaration of Moniz submitted in opposition to the summary judgment motion, which included a request for a continuance under HRCP Rule 56(f) to take the depositions of Loomis, Shigemoto, and Trinette Kaui (**Kaui**). Moniz's declaration noted that Kaui's name appears as a contact person on the invoices received by Plaintiffs. Moniz's declaration provides no explanation as to what specific facts further discovery might unveil. Because we review the circuit court's determination for an abuse of discretion, and given our review of the record, we conclude the circuit court did not err

in effectively denying Moniz's HRCP Rule 56(f) request for a continuance of the summary judgment motion.

### III.  Conclusion

Based on the above, the Judgment entered on June 19, 2015, in the Circuit Court of the Fifth Circuit is affirmed.

DATED:  Honolulu, Hawaiʻi, November 28, 2018.

On the briefs:

Stacy Moniz,
Plaintiff-Appellant pro se.

George Van Buren,
(Van Buren & Shimizu),
for Defendant-Appellee.

Chief Judge

Associate Judge

Associate Judge

10